We have four cases on for argument today. The first case is number 2009-3237, TUDOR v. THE DEPARTMENT OF THE TREASURY. Mr. Berger, you may begin when you're ready. Good morning, Your Honors. Mr. Tudor, who is the petitioner here, suffered an adverse action because, according to the findings of the Board, he improperly referred tax cases to the U.S. Attorney's Office for prosecution without authority. We know that Mr. Tudor at all relevant times was a criminal investigator for the Internal Revenue Service. The reasoning of the judge in the Board decision was that Mr. Tudor had authority to initiate cases but not to refer cases in his capacity as a group supervisor. Did the A.J. actually decide that he did have authority with regard to the initiation of cases? Well, I'm looking at his... I thought that what the A.L.J. said was that even if Spec. 1-35 are unfounded, like a hypothetical. The issue concerning the misconduct charge concerning the improper initiation of cases was not sustained by the Board, and so it didn't survive for review here. The only narrow issue that was sustained by the Board was the referral authority. We know that the Dallas Field Office, where Mr. Tudor functioned, had an unusual arrangement with respect to referral to prosecutions. Although the agency had a standing rule that only the special agent in charge had the exclusive authority to refer cases, that authority was delegated down to the ASAP. Assuming we agreed with you, sir, that the two points on page 8 of the A.J.'s opinion where the A.J. says Lasecki specifically testified that he never authorized referrals, twice, let's assume that that testimony simply is not in the record, which is what you aver, and I've listened to the tapes. I can't find it anywhere. So let's assume that you take those two lines out of the opinion because they're just wrong. What's next? What happens? Then there's no substantial evidence to support the As I understand it, and correct me if I'm wrong about the state of the record, but as I understand it, the various memorandums of interview and the report of the investigation were part of the record before the administrative judge. Is that true? They were, Your Honor, but not referenced at all in his decision, nor were they relied upon. I understand that, but they are in the consideration in determining whether the case was made out against Mr. Tudor. That's correct, Your Honor. Including the admissions, as reported at least, of Mr. Tudor, which admissions seem at odds with, or at least in tension with, his testimony. The admissions I'm referring to, just so we're all on the same page, the admissions, I guess, if you have the red appendix there, do you have that yet? Yeah, page 46, Your Honor. Pages, particularly on pages 71 and 74, this was, I believe, a memorandum of interview. Okay. Number six on page 71, Mr. Tudor stated that he never received verbal permission to refer investigation, and then he, later down on number 11, he had authority on, with respect to one investigation, but generally not, and then on 74, I believe, he never received verbal permission in the last paragraph to refer investigations to the department. The question would be, why isn't that evidence, substantial evidence, acknowledging that the administrative judge didn't specifically rely on that, but why wouldn't that be sufficient to I have two responses. One, with all due respect to the court, I don't believe the court has the jurisdiction to examine the internal memoranda of the agency because your jurisdiction is confined to review of the board decision. It's only the board decision that is here for your review. Well, but if the included this evidence, then this evidence is before us, because that comes up to us as part of the record on appeal. I would agree, but the judge's findings are confined entirely to the testimony of Mr. Lisinski, the SAC. He makes no reference at all to any of the agency internal memoranda. Well, I think Ms. King, I believe, does refer to Mr. Lisinski, the interview of Mr. Lisinski, in any event, right? In her testimony? Vaguely, yes, without, it's not particularized in any way, and the judge himself doesn't in any way particularize or make any reference to the record, but I would like to At the very bottom of paragraph 11, Mr. Tudor says, it's reportedly says, he's certain he did not willfully or intentionally, in the middle of that paragraph, he did not willfully or intentionally violate policy. It's absolutely untrue. I didn't circumvent the policy. My motivation was to follow the direction of my supervisor, he says. So, where were you reading? I'm sorry. I'm sorry. At 46? At page 46. Yeah, at 46. The last paragraph in the middle of that paragraph. Right, but the immediately preceding paragraph, of course, is not helpful to Mr. Tudor. In fact, it's pretty damaging. It says that I did not have authority to refer any investigations. I referred cases on my own. Understood. It's ambiguous, Your Honor. Well, what does he say right above that? Mr. Tudor stated, I believe I was given verbal authority to refer three investigations. Understood. Oh, yeah. I understand. He's in an interview. He's responding to their questions. He summarizes his state of mind. Who's writing? Who's typing up the interviews? Apparently, the internal affairs investigators. And was Mr. Tudor given a copy of these type-ups so he could correct them? Not that I'm aware of, Your Honor. He's not given a copy in order to review or sign. Let me go back to the two points in AJ's opinion that, for purposes of argument, we're going to extract. I take it your argument is that the credibility call that was made against Mr. Tudor was made because of the AJ's belief that Leskoski had testified that he never gave any authority at all. Correct. Because you've got to, once the AJ makes a credibility call against your client, we can presume that he is almost carrying that adverse credibility ruling across all of Tudor's testimony. I understand. So if the credibility determination falls, or no basis for it, then we go back to the record and we would have to credit all of Tudor's sworn testimony. That's correct. And the only evidence I believe this court has before it that's competent is the testimony at the hearing. There's no other reference. I mean, the testimony of Leskoski is actually inconsistent, if you will, in a way with his preliminary interview. Because in the interview he said, I can remember maybe five cases of initiation and one referral. And then when he's given the testimony, I believe your adversary who examined Leskoski pushed him on that and Leskoski said, no, no, I've got a different story here. That's correct. I had sort of blanket approval for initiating cases provided that there was follow-up and talk with Taylor. And he said with regard, a slightly different system with regard to referrals, sort of like the two of them had to work it out. Right, and there was no effort by the AJ to reconcile the internal memoranda of the agency with testimony at the hearing. And there was no effort to impeach Mr. Leskoski or Mr. Tudor by agency counsel at the hearing either with any alleged inconsistent statements. But is the question whether there's substantial evidence in the record, even though the AJ's opinion may not have made specific findings or may not have made specific statements attempting to reconcile statements, nonetheless they were considered and the AJ concludes that the first charge is supported based on the evidence of record, the appellant stipulations at the hearing and his admissions under oath. And doesn't the standard of review present an obstacle for you? Well again, I'll just, I will reiterate, I don't see where this court has the authority to assess the record, only the board's decision and the evidence that was adduced before the board. Now that's the evidence that was adduced before the board, which of course includes a lot of this evidence that we've been discussing, which even though the administrative judge didn't discuss it is still part of the record and therefore before us. So I think we can, I mean I understand your argument, but I wouldn't put a lot of weight on that contention. Well then the record is strewn with, with assuming, taking that into consideration, the record is strewn then with ambiguity and inconsistency. We as advocates can only respond to the evidence that's adduced really before the board. That's what the cross-examination is all about. Whether an agency itself substantiates a misconduct in and of itself, I just don't see that as the role of this court to make an assessment. If the judge himself didn't feel that it was relevant, relevant enough, material enough to even make mention, why can this court sit and substitute it to no hold judgment? If this judge had written a one-page, fortunately the administrative judges to their credit often write very lengthy and detailed opinions, but if this judge had written a one-page opinion and said I've looked at the evidence, I heard the evidence, I think the agency has sustained its case, and you were here, you know, you would not be able to say with any persuasive force that we can't consider evidence that the judge didn't discuss. So I don't think you have much to go on by saying we, for purposes of substantial evidence, we can't look at the entire body of evidence that's before the administrative judge and decide whether that was supported. Now you may argue fairly that the judge was wrong in, for example, his characterization of Leszczynski's testimony and that skewed, perhaps significantly skewed, the judge's ultimate conclusion, but that's a slightly different question from whether we can look at the rest of the evidence in deciding whether there's substantial evidence. You understand? I do understand that, your honor. I do understand that, but it seems to me that your role is not to sit here and make an assessment de novo. It doesn't appear that the court has the authority to just search the record with a searchlight and find anything out there, no matter where it's located, even if it's not brought up in the course of the board hearing. Does it matter that at least the report that's on pages 71, 74 seems maybe to have some of its own inconsistencies? I'm looking at paragraph 11, to which the presiding judge drew your attention earlier, where he said he knew he didn't have the authority to initiate or to refer. He knew that. Now that may have been he knew he believed he was given verbal authority to initiate and refer. Right, so there you've got apparently Lasecki saying, well, you know, what I'm asking is whether there's a possibility that when he was asked whether or not he had authority, he was thinking about, he knew that there was no written authority. His whole office was violating the Holy Bible. Right, there was no, there's any other places in this in this review where there is this inconsistency, there's no saying I had authority and I didn't. There was no standing authority whatsoever for him to refer those cases. There was no written policy that authorized him to refer those cases, but there was a deviation. We know there was a deviation because the judge made a finding on page six, on page five of his decision, that there was a deviation, there was a verbal deviation. That's what's so unusual about this. The SAC testified he had verbal authority to deviate from the standing policy and delegate verbal authority to the ASAC down the road. I don't think there's any real dispute about that. Yeah, so it's this informal scope. It's true, but how do we define that? And the only evidence that the board considered relevant is the testimony of Mr. Lissinsky, which we believe has been wholly mischaracterized. Whether we can look at your statutory, the review authority at 5 U.S.C. 7703, it's only limited to reviewing the final board order. The final board decision, not necessarily the final board opinion. Those are the only two that we can look at. Okay, thank you. Mr. Solomonson. Good morning, your honors, and may it please the court. Because substantial evidence in the record supports the MSPB's decision below, this court should affirm the decision sustaining the demotion penalty imposed upon the petitioner, Mr. Tudor. Is there any substantial evidence that in the opinion on page, appendix page 8, with regard to Lissinsky's statements that he never authorized appellant to make referrals? Yes, there are at least two places that support that statement. The first is the statement in the management or inquiry that I believe Judge what the AJ refers to at the top of page 8 is testimony by Lissinsky, not statements he may have made in the course of the investigation, right? Not necessarily, your honor. Well, the word testified is the word that's used. Then that's in the sentence preceding the one I believe Judge Lynn is referencing. Well, Judge Lynn, I think he's referencing both sentences. Yes, both. The first says that Lissinsky testified that he remembered talking with the appellant and that he gave him authority to initiate four or five. The sentence I'm looking at is appellant asserts that because the appellant asserts that he had verbal or implied authority to initiate investigations and referred investigation to the U.S. attorney and Lissinsky testified to the contrary. I don't see any testimony from Lissinsky to the contrary. Am I wrong in that? Well, there is another reference and that was the second one I was going to. Let's focus first on that. Is there any testimony to that effect or is the AJ simply wrong? No, I believe that there is testimony to that effect. Okay, point to it, please. Okay, it's located in, for ease of reference, in the petitioner's brief, your honor, at page 30 to 31 within the brief itself. The brief itself or the appendix? In the brief itself is just the, is one of the easier places to reference it, although we could look at. This is all where they gave authority to initiate. It's also in the, in referrals. The question is Mr. Tudor is facing the allegation that he initiated or referred under his signature 64 activities and is it your testimony that you had given him authority to do that on all those cases or only on the five? And the answer is I gave him the authority to initiate in only the bulk currency initiative cases, the five cases. Yeah, but it doesn't say anything about referrals. But the AJ being there reasonably interpreted the answer as saying that it is a compound question that drew no objection and the answer was given. I gave, I'll tell you the whole of referrals on a 65, he says when cases were referred for prosecution, my instructions to both Mr. Tudor and the ASAC were that that would have to be a situation that was discussed with the ASAC so that he had, he had authority to, to presumably act as long as he had the acquiescence of the ASAC. But Mr. Lesenski there in a 65 explicitly contrasts the authority issue with that to initiate investigations. With initiation, Mr. Lesenski said you could talk to the ASAC after you initiate. With respect to the referral, you couldn't go ahead and just refer cases for prosecution, but to the extent you referred cases for prosecution, you had to consult with the ASAC prior to or in conjunction with. So the notion and, and, and keep in mind please. When Taylor testified that he was in constant communication, pardon me, Tudor testified he was in constant communication with Taylor about this matter. He did and he also conceded that he can't say for certain whether the ASAC or Mr. Lesenski actually. You could have very easily called Taylor and asked her the question, right? Taylor didn't, wasn't called to testify, right? That's correct. So the question on, the question on the referral issue is was, was Tudor doing what Lesenski said he can do, which was you can go ahead and do the referral provided you worked it out with Taylor. But none of that would take away from the fact that this transcript can be interpreted in light of all the other evidence to read it exactly the way the AJ did. The, the AJ said, I understand Mr. Tudor to be saying. How does the AJ reconcile the Lesenski's testimony with this data point on page A71 about what happened in an interview when we don't know, you know, who was typing the interview up and the interview is inconsistent because at one point Tudor says he never had verbal permission and he said he was given verbal authority. The discrepancy between Mr. Lesenski's interview and the way the AJ interpreted his testimony was over one case. I'm not talking about, I'm talking, talking now about, about Taylor's interview, Tudor's interview. And you're, you're basically hanging your hat, I think, on the administrative record on the interviews, right? No. Also the AJ makes a credibility finding. For example, the AJ says that Mr. Tudor expressed surprise in, in being asked about the 64 different times that Mr. Tudor had initiated or referred cases for prosecution. That is precisely the type of reason why the AJ is given such almost unreviewable, uh, discretion to make credibility determinations because part of it is a judgment about body language and emotion at the time of the, of the testimony. And it's not just Mr. Tudor, it's not just Mr. Lesenski's testimony. We also have the testimony of Ms. King, of Deborah King, who is the, uh, the SAC who did the management inquiry. Now, let me make sure I referred to on A8. Now you are, I gather you're saying, well, the first reference on line three to testimony, um, is not erroneous because it's a compound question. The second reference, uh, where we say that after referring to Lesenski's testimony on about line 10, we say Lesenski specifically stated that he never authorized the appellant to make referrals to the U.S. attorney. Now you are saying that is not inconsistent with the statement on A65 of the blue appendix because what? Because Lesenski, that the statement stated is not a reference to testimony? A65. A65. That's where he said, he said, uh, that the referrals could be made as long as they were discussed, uh, by the agent in charge. Uh, no, your honor. My, my, uh, our point with respect to A65 is that Mr. Lesenski is contrasting it with the authority that he gave him to initiate investigations in certain cases. Right. But the ref, the statement that appears in the opinion on AA is that Lesenski said he never authorized the appellant to make referrals to the U.S. attorney. That seems to be inconsistent with, I mean, there's no testimony, at least in Hike-Verba to that effect in Lesenski. So that's wrong, correct? There is no. That's a mistake by the administrative judge. In defense of the administrative judge, that the statement is not in quotes, but it, that language does not appear. He doesn't explicitly, Lesenski doesn't explicitly testify, I never gave him prosecution authority. That or in substance does not say that. Well, in. I mean, this is an important point. That, that, this is a critical point in the case. And if the AJ got it wrong, it seems to me that affects a lot about the way we should view the administrative judge's opinion, don't you think? But the administrative judge is, well, even. Did the administrative judge get that one wrong? Let's just start with that proposition. Did Mr. Lesenski testify explicitly the way the AJ said no? Or in substance? I believe in substance, yes, your honor, he did. Find me the place where in substance he testifies that he never authorized the appellant to make referrals to the U.S. attorney in his testimony. Well, that, that testimony, I believe on 65, your honor, where he says, where, where Mr. Berger asked Mr. Lesenski, what about with respect to cases referred for prosecution? Did you have the same arrangement as, as with the initiation? Not necessarily. He had to speak with or discuss it with the ASAP. Yeah. And then on cross. That's how he gets the authority. And, but, but he doesn't have this blanket authority. Remember Mr. Tudor's testimony. Blanket authority. We're talking about any authority at all because it's the no authority at all point and that the ALJ is relying on that we're pressing. But Mr. Tudor's claim is that he has complete and total authority. As long as my supervisors kind of knew what was going on, because they kind of knew what was going on. And since they kind of knew what was going on, I had this complete blanket authority. I didn't have to. What he may have thought his authority was is different from whether or not Lesenski never gave him any authority at all. He may have misunderstood what Lesenski told him he could do. What we're pressing on now was whether or not the board was incorrect when it seemed to have pitched an important part of his decision on the thought that Lesenski had never given any authority of any kind whatsoever to refer. Even if that statement in the board's decision was completely discounted, we're talking about a discrepancy over a single case because the only other way to interpret Mr. Lesenski's testimony on cross is that he gave authority. Mr. Lesenski was not asked by you whether he gave authority only once to refer. I know that was his statement in his interview that he could only recall once, but I don't believe you pressed him on that issue. Not me personally, your honor. Well, with your agency, I know you listened to all the tapes. He wasn't pressed on that. But he did say it was a compound question about referral and investigation, and he said, and I only gave him authority in five cases. We've been through that, but then you come to the testimony on A-65. But we also have Mr. Lesenski and Mr. Tudor in the management inquiry and in the IG investigation saying it was at most one case, and we have the testimony of Ms. King testifying that Mr. Lesenski told her never when it came to referrals. So we have the testimony of Ms. King. Which seems at odds with the material on A-65. And that's why this court should give the deference to the A.J. it deserves that she interpreted the testimony. But if the A.J. had said, well, you know, here's what he told Ms. King, but he testified differently at the hearing. But I believe what he told Ms. King is more likely to be true, then you'd be all right. But instead, what the A.J. says is he testified that he didn't give authority. And if that's wrong, then it isn't open to you, readily at least it seems to me, to say, well, he weighed the King statement against his testimony at trial. He concluded, perhaps incorrectly, that his testimony at trial was consistent with the statement he made to Ms. King. But ultimately, the board's finding below is that the board found it, quote, inherently improbable that Mr. Tudor believed he was either granted such authority or that he could reasonably believe that he had been given such broad powers, because his claim of such broad authority was at complete odds with the regs, the documents. Mr. Salson, apart from authority, whether or not there had been authority conveyed by Mr. Losecki, I point you to, I want to have you look at the testimony that's in the supplemental appendix filed by Mr. Berger at A-364. They're now talking to Fred Gosen, who's the deciding official. Yes, Your Honor. And he says, now, if you had concluded that Taylor or Losecki was aware of what he was doing, exercising his authority, if they were just aware of what he was doing, would that have changed your opinion regarding sustaining reason one? Yes. So this doesn't go to whether or not Losecki ever gave him any authority. They're saying to the deciding official, well, if, and this is pretty clear, if either Taylor or Losecki was aware of what Tudor was doing and condoned that, would the penalty have been assessed? The answer is no. Two responses, Your Honor. Mr. Tudor does not... Doesn't the record show without any question that both Taylor and Losecki were aware of what Tudor was doing? Absolutely not, Your Honor. Is there any, is there any testimony that they were not aware of? There is. Taylor testified that, pardon me, Tudor testified that Taylor knew what he was doing. Clearly. Generally. But Mr. Tudor conceded that he had no evidence that they were aware of the specific 64 cases that were the basis of the charge. That's not the same thing. Were they aware of what he was doing, of what he was exercising? And Taylor testified, Tudor testified, I sat down with Taylor, we went through all the cases. Did you, from that, did you believe that she must have known that you signed the forms? Absolutely, he said. Your Honor, they're talking specifically at that transcript page about the specific instances, not as a general matter. They're talking about the specific forms of the 4930s. How do we know that? In the question on line four. Right, but they're just saying, are, were you aware of his exercise of approval authority, that the fact that he was signing the 4930s, right? In this specific case. And what would, what would your answer be if you, if, if the record in fact showed here without any contrary evidence that both Taylor and the SAC were aware of him signing the 4930s? In these specific cases? Just say, just say was aware. If this was, if this is true. Sure. What I'm trying to get at is, here, the deciding official, when confronted with the possibility that the two bosses knew what he was doing and condoned it, he said, I wouldn't have punished him. There's no evidence that they were aware that he signed these, all 64 of these, in particular with respect to the prosecution. It's not, he doesn't say was, did, that he signed, that he, that he physically signed it. Was he exercising the authority that he was told that he shouldn't be doing was signing the form? Well, aware of his approving activities to me means that he was aware of the specific activities. How do you, how do we know that? Did you ask that follow-up question? Well, we know that because when we didn't, you didn't follow this up. But Mr., when on, on cross, Mr. Tudor himself conceded that he did not make them aware on a 4930 form by form basis. He didn't say that? Where in the record did, did Tudor ever explicitly say that he did not show them a 4930? I'd have to go to the complete volume. Pretty important point, isn't it, on, right on what we're talking about now? Have you listened to all the tape? Yes or no? Have I listened to the tapes? No, but I read the complete transcript. It might have been a good idea to listen to the tapes since you objected to the transcripts. Well, Your Honor, we were just, uh, pressing the issue based on the rules of the, of the court. Right, but then, but then in your brief, you never even bothered to respond to the lead argument from Mr. Tudor that the ALJ was wrong when he said this testimony was uh, Ms. King, which was unchallenged by the petitioner, is more than sufficient, substantial evidence. Okay, well, come back on this point. Where, where in the record is there an explicit admission by Mr. Tudor that he, that he was asked the question, did you ever, you know, ask them whether they knew that you signed this particular 4930? I have to ask for the court's indulgence for just a second. I may have missed it, but I didn't see it. The questions were more general, was the boss aware of what you were doing? Yep, sure were. Well, what were you doing? It's, I believe it's roughly on page 270 and 271 of the large transcript that the court admitted in the motion, in the second. 270? 270. Is this yours or his? Uh, this was a, the um, 270 of the transcript. Of the transcript. Oh, pardon me, okay. And where, where is that? It's at page, that's at page 413. Uh, actually, I'm not sure that's, you know what, I might not have the right. 413. Uh, here it is. It's on 278, your honor. Well, it's, it's, do you have personnel knowledge that he knew of each and every one of these 64 cases in which you were the approving official? Mr. Tudor responds, I would think so, yes. That's an assumption on your part, right? Yes. You had no direct conversation where he said, this case I give you approval, this case I give you my delegation, correct? And the conversation continues, but he agrees that he assumed that his, uh, superiors had such knowledge. Well, when he was specifically asked, would you agree with me that you're, you only informed them of specific verbal approval from Mr. Lisinski as to the three bulk initiative cases, he answered no. So, maybe that's, all right, well, we have, I'm sorry, we've called you at the time and we'll hear rebuttal argument from Mr. Berkman. Very quickly, your honor. Yes, the management was wholly aware of Mr. Tudor's activities referring cases. Let's very quickly start with page A65, the blue appendix A65. SAC testified, Mr. Lisinski, he was continuously briefed about that the ASAC told him that she was reviewing the group's work as well. On pages A66, A67, a specific reference to the 4930s is made, lines 10 through 20. SAC says, Mr. Lisinski, in all of these reviews, meaning the field office reviews, the management reviews, all three of those reviews, all three of those, not three cases. The reviews are listed on the page A66. If we take a quick look, line 6 through 22, there was a policy of the field office, two occasions per year, either the SAC or the ASAC would do a group review of the group, including a review of all the investigations that were initiated and prosecuted, line 12. In addition, once a year, the SAC supervisor, the director of field operation. So that's what you say are the three. There are three of them. Reviews, not three cases. That's correct. There were three separate reviews, and he says on A67, lines 10 to 12, in all three of those reviews, there would have been reviews and assessments of the 4930s filed by Tudor. And he goes on to say, so if he's asked whether, you know, if he signed them, would upper management have been aware of that? Is that correct? He answers, yes, on line 20, correct. That's correct. And so what do you make of the point that I was concerned about, which is laying aside the question of whether or not Lasecki gave him authority, the deciding official here, who's chief high punisher, testified that if Lasecki and or Taylor had been aware of what he was doing with regard to the 4930s, then he wouldn't have punished him. I mean, is that an independent ground on which we can reverse here, because passing the question of whether or not, for the knew what he was doing, he wasn't on it? I understood, and the court should defer to the agency deciding official on that issue. There, he's in the best position to know, and he says he wouldn't penalize his own employee had he understood, had he properly understood, that in fact, Tudor had at least implied authority to do what he did with the knowledge of his management. And that's what the record clearly establishes in this case. After he had an opportunity of a full-blown evidentiary hearing with cross-examination and bring his witnesses, as opposed to the management review, which was stilted. He's passive. He doesn't have a privilege of asking any questions. He can only respond to questions, and he has no idea what they're writing down. It is the board that is the best test of the truth, because we have the benefit of cross-examination. And I ask that this court reverse this case, remand it, and let's get an appropriate, reasonable penalty. Thank you. Thank you. Case is submitted.